**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **TATYANA PALIEV** | ) | **Case No. 11-17647-BFK** |
| | ) | **Chapter 13** |
| **Debtor** | ) | |

**MEMORANDUM OPINION**

This matter comes before the Court on the Chapter 13 Trustee's Objection (Docket No. 28) to confirmation of the Debtor's Amended Chapter 13 Plan (Docket No. 27).  The Trustee objects to confirmation on two grounds: (a) good faith (11 U.S.C. § 1325(a)(3)); and (b) disposable income (11 U.S.C. § 1325(b)(1)(B)).  The Debtor concedes a number of items on Schedule B22-C that are the subject of the Trustee's Objection.  However, the Debtor maintains that, after making all of the required adjustments, her Plan still calls for her to pay $500 per month, an amount in excess of what she is actually required to pay (by her calculations, $463 per month).

The Trustee also has moved to dismiss the bankruptcy case on the grounds of: (a) good faith (11 U.S.C. § 1325(a)(3)); and (b) unreasonable delay that is prejudicial to creditors (11 U.S.C. § 1307(c)(1)). Docket No. 29.

The Court has reviewed the parties' submissions, and has heard the evidence and the arguments of the parties.  The matter is ripe for a decision.  For the reasons stated below, the Court will sustain the Trustee's Objections to the Debtor's Amended Plan on the ground of disposable income.  The Court will deny the Trustee's Motion to Dismiss.

**Findings of Fact**

The Court makes the following findings of fact:

1.        The Debtor lives in Ashburn, Virginia, and is married.  She has one daughter, age 7, from a previous marriage.  Her parents, age 74 (father) and 63 (mother) live with the family. The Debtor's parents are not citizens of the United States, and do not have access to Social Security or Medicaid for purposes of health insurance.

2.        By any standard, the Debtor has a good income.  She earns approximately $128,172 per year as a data manager.  Form B22-C, Line 1, Column A.  Her non-debtor spouse earns approximately $30,912 per year.  *Id*. at Column B.  The Debtor is an above-median Debtor for purposes of Chapter 13.

3.        The Debtor and her husband rent out the basement of their home for approximately $800 per month.  Form B22-C, Line 4(a).  To calculate the related rental expenses, the Debtor averaged the rental expense deductions taken on her 2010 and 2011 tax returns, which were $300 per month and $97 per month (rounded to $100), respectively. Accordingly, the rental expense deduction on Form B22-C is $200 per month, which results in a net income of $600.[1]

4.        The Debtor's husband pays: (a) $565 per month for a 529 college fund for the Debtor's daughter; (b) $37 per month for a gym membership for himself; and (c) $145 per month in Social Security and Medicare taxes.[2]  These items are deducted as a part of the marital adjustment to Form B22-C, on Line 19.  The Trustee takes issue with each component of the marital adjustment.

---

[1]   The Debtor initially deducted rental expenses totaling $283.00 on Schedule B22-C, Line 4(b), which resulted in net rental income of $517.  At the evidentiary hearing, however, she revised this number to $200, which results in net rental income of $600 per month.
[2]   All amounts, throughout this Opinion, are rounded to the nearest dollar amount.

2

5.      The parties agreed at the evidentiary hearing that the health care deduction (Line 24B) would be adjusted downward from the $468 listed on Line 24B, to $384.

6.      On Line 30, the Debtor took a deduction of $2,380 for taxes.  At the hearing, the Debtor adjusted this figure upward to $2,717, based on: (a) her 2011 federal tax return (total taxes: $18,676 divided by 12 = $1,557); (b) her 2011 Virginia tax return (net tax: $6,117 divided by 12 = $510); (c) her monthly FICA taxes ($604); and (d) personal property taxes for her vehicles ($46).

7.      With respect to the personal property taxes, the Debtor testified that the six-month tax bills for her vehicles total $120 for the husband's car, $163 for the Debtor's car, and $75 for the Debtor's father's car.  At the hearing, the Debtor voluntarily agreed not to deduct the taxes associated with her father's car.

8.      On Line 32, the Debtor took deductions in the following amounts for three life insurance policies, all three of which are term policies, and for which the Debtor's daughter and husband are the named beneficiaries: (a) $46 per quarter; (b) $200 per quarter; and (c) $20 per month (her present, employer-sponsored policy). This comes out to a total of $103 per month - $83 for the first two policies, and $20 for the employer-sponsored policy.

9.      The Debtor adjusted her telecommunication (internet) expenses downward from the $100 claimed on Line 37, to $60.  This was agreeable to the Trustee.

10.     On Line 43, the Debtor took a deduction of $147 for educational expenses for her daughter.  This consisted of: (a) $55 per week for a tutor, which has been recommended by the daughter's school; and (b) an additional, undetermined amount for supplies (books, art supplies

and the like).[3]  These amounts, taken together, exceed the allowable amount under 11 U.S.C. §

707(b)(2)(A)(ii)(IV) ($1,775 per year, divided by 12 = $148), so the Debtor capped this amount

at $148 per month.

11.     The Debtor contributes $500 per month to her 401(k) Plan.

12.     Shortly before the bankruptcy case was filed, the Debtor took a loan from her

401(k) plan, in the amount of $4,600, which she used to: (a) pay her bankruptcy attorney a

retainer; and (b) get current on her mortgage payments.  The Trustee argued that this is evidence

of bad faith.  The Debtor responded by asserting that: (a) she needed a bankruptcy lawyer; and

(b) if she had not paid the mortgage arrears, she would be paying them in a Chapter 13 Plan to

the detriment of the unsecured creditors.  The Debtor is paying $204 a month in repayment of her

401(k) Loan.

13.     The Debtor's Amended Chapter 13 Plan proposes to pay $75 in the first month,

and $500 per month thereafter for the remaining 59 months of the Plan.  Her Plan proposes to

pay approximately 13% to her unsecured creditors, whose claims total $133,102, according to

her Amended Plan.  Docket No. 27.  The Plan states that the Debtor intends to seek a strip off a

third lien mortgage obligation to Navy Federal Credit Union.  *Id*. at § 7(B).  The Plan further

provides that there are no arrearages to be paid on her first or second mortgage.  *Id*. at § 5(A).

14.     On Schedule I, the Debtor indicates that she and her husband have a combined

average monthly income of $9,869.  On Schedule J, she indicates that she and her husband have

---

[3]  As noted below, the Debtor did not state an amount for the additional educational expenses because the tutoring
expenses of $55 per week exceed the statutory cap of $147 per month.

$9,793 in combined average monthly expenses, for a net combined monthly income of only $76.[4]

## Conclusions of Law

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the Order of Reference of the U.S. District Court for the Eastern District of Virginia dated August 15, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) (confirmation of plans).

Under Bankruptcy Code Section 1325(b)(1)(B), the Debtor is required to dedicate her "projected disposable income" to the plan for the applicable commitment period.  Here, the Debtor's applicable commitment period is five years because the Debtor's income is above median.  11 U.S.C. § 1325(b)(4).

The term "projected disposable income" is not defined by the Code.  The term "disposable income" is defined as "current monthly income received by the debtor (other than child support payments . . . [and certain other exceptions]), less amounts reasonably necessary to be expended for  the maintenance or support of the Debtor or a dependent of the Debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed;" for certain charitable contributions; and "if the Debtor is engaged in a business, expenditures necessary for the continuation, preservation, and operation of the business." 11 U.S.C. § 1325(b)(2)(A) & (B).  In turn, the term "current monthly income" ("CMI") is defined as the average monthly income received from all sources, derived during the six months preceding the bankruptcy case, and includes "any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the

---

[4]  Schedules I and J often provide the Court with a more current, real-world look at the Debtor's monthly income and expenses.  As such, they often provide a basis for a feasibility objection under 11 U.S.C. § 1325(a)(6).  Here, at least for now, the Trustee has chosen to focus exclusively on Form B22-C, and not on Schedules I and J.

debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent)." 11 U.S.C. § 101(10A). This last phrase gives rise to what is known as the marital adjustment.

Being above-median has two consequences for the Debtor. First, as noted above, the Debtor's applicable commitment period is five years. 11 U.S.C. § 1325(b)(4). Second, the term "less amounts reasonably necessary to be expended" under Section 1325(b)(2)'s definition of "disposable income" is defined by the means test of Section 707(b)(2) of the Code. 11 U.S.C. § 1325(b)(3). For below-median Debtors, the Court looks to their actual income and expenses as of the date of the filing of the petition, using Schedules I and J. For above-median Debtors, the means test provides a somewhat artificial, six-month look at income and expenses, by reference to Schedule B22-C.[5] The artificiality of the means test has been lessened, to a certain degree, by the more real-world view of income and expenses expressed by the Supreme Court in two separate cases: (1) *Hamilton v. Lanning*; and (2) *Ransom v. FIA Card Services, N.A.* See *Hamilton v. Lanning*, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010) (the "income side" case, taking into account such out of the ordinary events as a one-time bonus received within the six months preceding the case), and *Ransom v. FIA Card Servs., N.A.*, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011) (the "expense side" case, disallowing a deduction for auto ownership expenses, where the Debtor did not own a car as of the date of filing). *See also Morris v. Quigley (In re Quigley)*, 673 F.3d 269 (4th Cir. 2012) (following *Lanning* and *Ransom*, and disallowing a secured creditor deduction for property to be surrendered under the Debtor's plan).

With this background, the Court turns to the Trustee's specific Objections to the Debtor's Plan, and the Debtor's Reponses.

---

[5] The Court uses the term "artificial" here because many of the items on Form B22-C are taken from national and local standards, and may not be reflective of the Debtor's actual monthly expenses in any of those categories.

1.  *Good Faith – 11 U.S.C. § 1325(a)(3)).*

The term "good faith" is not defined in the Bankruptcy Code.  In *Deans v. O'Donnell*, the Fourth Circuit held that, in examining whether a case was filed in good faith, "the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan."  692 F.2d 968, 972 (4th Cir. 1982) (citing 9 Collier on Bankruptcy § 9.20, at 319 (14th ed. 1978) (discussing Section 766(4) of the Bankruptcy Act)).  The factors to be considered include "the percentage of the proposed repayment" to creditors, "the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing the facts, and any unusual or exceptional problems facing the particular debtor."  *Id*.  Although *Deans* preceded the 2005 BAPCPA Amendments by a number of years, it remains good law today.  *See*, *e.g., In re Villca*, No. 09-16569-SSM, 2009 WL 3754737, at *2 (Bankr. E.D. Va. Nov. 5, 2009) (citing *Deans)*.

The focus in *Deans* on whether there was an abuse, which the court examined to determine whether the Debtor's Plan was filed in good faith, brings us to the more recent case of *Calhoun v. United States Trustee*, 650 F.3d 338 (4th Cir. 2011).  In *Calhoun*, the issue was whether the Debtor (in that case, a Chapter 7 Debtor) was guilty of "abuse" under Section 707(b) of the Code.[6]  *Id.*  The Fourth Circuit rejected the Debtor's argument that the means test of Section 707(b) was the beginning and the end of the abuse inquiry.  *Calhoun*, 650 F.3d at 342. The Court held that "[t]he means test is not conclusive, the presumption [of abuse] is rebuttable, and a court may still find abuse even if there is no presumption."  *Id*.  Here, the Code instructs us

---

[6]   Prior to the 2005 BAPCPA Amendments, the statutory term was "substantial abuse."

7

to look to Section 707(b) for a determination of "abuse" for above-median Debtors; therefore, the inquiry is substantially similar. *See* 11 U.S.C. § 1325(b)(3).

In this case, the Trustee's fundamental objection is that the Debtor grosses roughly $128,000 per year, and she is proposing to pay her unsecured, non-priority creditors only 13% of their claims, at a rate of $500 per month for the 60-month life of the Plan. But, this does not really tell us whether the Plan was filed in good faith. From at least *Deans* forward, the Fourth Circuit instructs us to look at the totality of the circumstances of each case. Here, the Debtor testified that she has elderly parents living with her and her family, neither of whom receives Social Security, and neither of whom is eligible for Medicaid. The Trustee's overall good faith objection lacks the nuance required to decide the issue of good faith with respect to this particular Debtor and her financial circumstances.

Alternatively, the Trustee argues that there is a lack of good faith because the Debtor borrowed $4,600 against her 401(k) Plan shortly before her bankruptcy filing in order to fund her bankruptcy counsel's retainer and make up her mortgage arrearages.[7] It is not surprising, though, that the Debtor would turn to this available source of funding for these needs in difficult financial circumstances. And, the Debtor is certainly right in one respect – if she had not borrowed from her 401(k) in order to pay the mortgage arrearages, the arrearages would have had to be paid in her Chapter 13 Plan, to the detriment of the unsecured creditors. Consequently, the Court cannot find a lack of good faith based on the Debtor's pre-petition borrowing from her 401(k). *See infra* Part 2(J) (discussing qualified retirement deductions and the Debtor's good faith in taking a deduction for the repayment of her 401(k) loan).

---

[7] Although there was no testimony on the breakdown of how the funds were spent, the Court takes judicial notice of Debtor's counsel's Rule 2016(b) Statement, which indicates that he received a $3,000 retainer in this case. Docket No. 1. The Court concludes, based on the Debtor's testimony, that the balance of the loan, $1,600, was used to pay down the mortgage arrearages.

8

Finally, the Trustee asserts that there has been unreasonable delay in the case that has been prejudicial to the creditors.  The Debtor filed her bankruptcy case on October 21, 2011.  The case has been pending for roughly 9 months.  The Debtor is on her first Amended Plan.  It is not unusual in this District for Debtors to file a third, or even a fourth, Amended Plan in order to gain confirmation.  Consequently, the Court cannot find that the Debtor's Plan was filed in bad faith, nor can the Court find that the case should be dismissed.  The Court will overrule the Trustee's Objection to confirmation of the Debtor's Amended Plan insofar as the Objection is based on good faith under 11 U.S.C. § 1325(a)(3).

The Court also will enter an Order denying the Motion to Dismiss under 11 U.S.C. § 1325(a)(3) (good faith) and 11 U.S.C. § 1307(c)(1) (unreasonable delay).

### 2.  *Disposable Income - 11 U.S.C. § 1325(b)(1)(B).*

The Trustee's Objections focus on the Debtor's above-median Form B22-C calculations.  The Court finds that, in some cases, the Trustee is correct; in other cases, the Debtor is correct, and she will be allowed to deduct the requested expenses.  Ultimately, the question comes down to whether the Trustee's Objections require the Debtor to increase her plan payments beyond the currently scheduled $500 per month plan payments.  If so, confirmation must be denied.  If not, the Plan should be confirmed.  For the reasons stated below, confirmation of the Debtor's Amended Plan will be denied.

The Court reviews the following line items on Form B22-C.

*A.  Net Rental Income – Line 4.*

The Debtor receives $800 per month in rental income from the rental of the basement of her property.  The Debtor testified that she deducted rental expenses of approximately $300 per month on her 2010 tax return, and roughly $100 per month on her 2011 return.  In calculating the

9

necessary monthly operating expenses associated with her rental income on Form B22-C, the

Debtor averaged these numbers, to arrive at monthly rental expenses of roughly $200 per

month.[8]  Accordingly, she claims $600 per month in net rental income.

The Trustee objects, arguing that the tax return numbers do not reflect the Debtor's actual

monthly expenses.  For example, the Trustee suggests that installing a new refrigerator is not a

recurring, monthly expense, and that certain outside maintenance expenses (painting, lawn

maintenance) are required regardless of whether the Debtor chooses to rent out her basement.

The Trustee is, in part, correct in this regard.  However, if a new refrigerator is not needed, other

expenses associated with the rental portion of the property will inevitably present themselves.

Moreover, the opposite is true – during the life of the five-year plan, it is likely that the Debtor

will lose some rental income due to tenants coming and going.  Yet, Schedule B22-C contains a

steady, 60-month inclusion of rental income at $600 per month, net of expenses, without any

reserve for lost rent.  The Court agrees with the Debtor that this is the best measure of calculating

the net rental expenses and income.

Accordingly, the Court will overrule the Trustee's Objection insofar as the net rental

income is concerned, and allow net rental income of $600 per month. Because the Debtor's Form

B22-C currently reflects net rental income of $517.00, *see* Debtor's Form B22-C, Line 4, a net

rental income figure of $600 results in an *increase* to the Debtor's monthly disposable income of

**$83.**

B.  *The Marital Adjustment – Line 19.*

The marital adjustment derives from Section 101(10A)'s definition of current monthly

income (CMI), which provides in relevant part:

---

[8] The Debtor revised her rental expense figure at the hearing.  In her originally filed Form B22-C, the Debtor
asserted rental expenses totaling $283.00.

[CMI] includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes… [exclusions not relevant here].

11 U.S.C. § 101(10A)(B).

Form B22-C reflects this statutory mandate, stating:

**Marital Adjustment.**  If you are married, but are not filing jointly with your spouse, enter on Line 19 the total of any income listed in Line 10, Column B that was NOT paid on a regular basis for the household expenses of the debtor or the debtor's dependents.

Form B22-C, Line 19 (emphasis in original).  Further, Form B22-C, Line 19 gives as examples "payment of the spouse's tax liability or the spouse's support of persons other than the debtor or the debtor's dependents."  *Id.*

In *In re Vollen*, the court, in defining the Debtor's CMI, ably explained that:

what a non-filing spouse regularly pays for household expenses of the debtor or debtor's dependents is included in the debtor's CMI.  What the non-debtor spouse does not pay toward household expenses of the debtor or debtor's dependents is "deducted" from the debtor's CMI as a marital adjustment on Line 19 of Form 22C.

\*\*\*     \*\*\*     \*\*\*

The key inquiry for determining the propriety of a marital adjustment on Line 19 is the extent to which a non-filing spouse's income is not regularly contributed or dedicated to the household expenses.  The statutory predicate for this marital adjustment is found in the definition of CMI, which includes "any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents."  If the non-filing spouse's income is not regularly contributed for household expenses, it should not be included in calculating a debtor's disposable income and should be "deducted" from CMI as a marital adjustment.

426 B.R. 359, 368-70 (Bankr. D. Kan. 2010) (footnotes omitted).

The marital adjustment deduction presently reflected in the Debtor's Form B22-C totals

$1,069.  This deduction is comprised of three line items: (1) paycheck deductions ($388), (2) the

11

Debtor's husband's deductions with regard to a 529 college savings plan ($565), and (3) miscellaneous deductions described in the Debtor's Continuation Sheet ($116).  Each will be discussed, in turn.

> (i)     *Paycheck deductions*

The Debtor contends that she is entitled to deduct her husband's payroll deductions (consisting of (1) federal and state income taxes, and (2) FICA taxes) from her projected disposable income, and that she has no preference with regard to whether the deductions are taken at Line 19 or Line 30.  The Debtor proposes to deduct her husband's FICA taxes (totaling $145) at Line 19, and to deduct his income taxes at Line 30.  The Court agrees that the Debtor is entitled to deduct her husband's payroll deductions in calculating her disposable income, and, because the Debtor will qualify as an above-median debtor regardless of where the deductions are taken, the Court finds that a ruling on whether the deductions are more appropriately taken at Line 19 or Line 30 is unnecessary in this case.  Moreover, the Trustee does not contest the accuracy of the FICA deduction ($145) taken with regard to the Debtor's husband.[9] Accordingly, the Court will permit the Debtor's proposed bifurcation of her husband's payroll deductions, and allow the Debtor to deduct $145 at Line 19(a) and the payroll taxes attributable to her husband at Line 30.

Because the deduction currently reflected at Line 19 is comprised of both income taxes and FICA taxes ($388), the Court will reduce the balance to $145 – representing only the Debtor's husband's FICA taxes – to avoid double-counting the Debtor's husband's income taxes.  Reducing the deduction to $145 will result in a **$243** *increase* in the Debtor's monthly disposable income**.**

---

[9] The Trustee does, however, contest the accuracy of the FICA deduction taken with regard to the Debtor at Line 30. *See infra* Part 2(D)(i).

(ii)     *The 529 College Savings Plan.*

Unquestionably, 529 College Savings Plan is an expense paid by the Debtor's husband for the benefit of the Debtor's daughter, who is a dependent of the Debtor.  Thus, it must be considered a household expense for the benefit of a dependent, and cannot be deducted as a part of the marital adjustment.  The Debtor's argument, to the effect that this is the husband's income and that he may therefore do what he wants with it, misses the mark.  It is certainly true that the non-debtor spouse can spend his income in any way he pleases, without interference or oversight from the Court.  But Congress has plainly indicated that if a non-debtor spouse spends a portion of his income for the support of the Debtor or her dependents, then there can be no marital adjustment within the Debtor's case for such expenditures.

The Court recognizes that there is no small irony in disallowing the marital adjustment resulting from the husband's generosity in paying for the Debtor's daughter's 529 savings plan, in effect counting this amount against the Debtor.  *See infra* Part 2(B)(ii) (illustrating where expenses that are exclusively for the benefit of the husband *are* deducted as a part of the marital adjustment).  This is not the first anomaly to be noted as a result of the BAPCPA Amendments, nor, surely, will it be the last.  However, with regard to the marital adjustment, Congress intended that the Debtor and her non-debtor spouse be treated as a single economic unit where they act as a single economic unit.  Conversely, where the non-debtor spouse acts for his own benefit, outside of contributions to the debtor or the debtor's dependents, i.e., spousal support or child support paid to a previous spouse or a previous spouse's child, then this can be deducted as a marital adjustment because it does not benefit the Debtor or her dependents.  Had the words "*or the debtor's dependents*" not been made a part of Section 101(10A)(B), the result clearly would be different.

And the result, while anomalous, is not entirely unfair.  If the marital adjustment were allowed, then in effect, the Debtor and her husband would be permitted to fund her daughter's college education expenses at a rate of $565 per month – a total of $33,900 over the 60-month life of the Plan – to the detriment of her creditors.

Accordingly, the Debtor will not be permitted to deduct the Husband's contribution to the 529 savings plan, which will result in an *increase* to the Debtor's monthly disposable income in the amount of **$565.**

(iii)    *Continuation Sheet Deductions.*

The Debtor deducted two items on her Continuation Sheet: (1) "Husband's Gym" ($40); and (2) "Retained by spouse" ($76).  At the hearing, the Debtor indicated that the deduction taken for her husband's gym membership should have been $37 per month.  The gym membership is an example of an expense that is not made for the benefit of either the Debtor or the Debtor's dependents, and will be allowed for purposes of the marital adjustment.

In discussing the marital adjustment at the hearing, however, the Debtor made no mention of the "[r]etained by spouse" deduction.  To the contrary, the Debtor indicated that this expense was comprised solely of three separate line items: FICA taxes, the 529 savings plan, and the gym membership.  Accordingly, the Court concludes that the Debtor does not intend to include the $76 "[r]etained by spouse" item as a part of her marital adjustment.  The Court will exclude this in its calculation.  In sum, therefore, the gym expense ($37) is the only line item that should be included in the Debtor's Continuation Sheet.  The deduction taken at Line 19(c) should be reduced from $116 to $37.  This will result in an *increase* of **$79** in the Debtor's monthly disposable income.

14

*C.  Health Care Standards – Line 24B.*

The parties agree that this item should be reduced from $468 to $384, resulting in an *increase* to disposable income of **$84.**

*D.  Other Necessary Expenses (Taxes) – Line 30.*

*(i)       Amount of Income Taxes.*

The Debtor took a deduction on Line 30 in the amount of $2,380.  The Trustee asserts that the Debtor miscalculated this deduction by (a) overstating the Debtor's monthly FICA taxes; and (b) including personal property taxes in the calculation.  As a result, the Trustee argues that this amount should be lowered to $2,048.

In reexamining her calculation at the hearing, however, the Debtor countered that the number should actually be *higher*, based on the following:

2011 Federal Tax Return "Total Taxes" of $18,676 divided by 12 = **$1,557**[10]

(*See* Debtor's 2011 Federal Tax Return, Debtor's Exh. 2, Line 61)

2011 State Tax Return "Net Tax" $6,117 divided by 12 = **$510**

(See Debtor's 2011 State Tax Return, Debtor's Exh. 2, Line 4)

2011 FICA Taxes = **$604**[11]

Personal Property Taxes (2 cars) = **$46**[12]

(See Debtor's Personal Property Tax Bill, Debtor's Exh. 10)

Total: $2,717

---

[10] The Court concludes that, because the Debtor and her husband filed joint tax returns, *see* Debtor's Exh. 2, calculating the Debtor's allowable deductions based on these returns, and allowing the Debtor to deduct both her and her husband's income taxes at line 30, is more accurate and straightforward than attempting to bifurcate the deduction, whereby the debtor would deduct her income taxes at Line 30, and her husband's income taxes at Line 19.  *See supra* Part 2(B)(i).

[11] The Debtor did not provide copies of her Form W2 to support this figure, but testified at the hearing that this was the amount that she paid each month in FICA taxes.

[12] *See infra* Part 2(D)(ii) for a discussion of the calculation of the Personal Property Taxes.

The Court finds the Debtor's calculation to be the more accurate of the two.  At the outset, the Court notes that the Debtor's monthly Federal and State Taxes alone, which total $2,066 ($1,556 + $510), exceed the Trustee's proposed figure.  Moreover, although the Debtor failed to provide copies of her Form W2 statements to support her monthly FICA tax withholding, based on a tax rate of 4.2% of the Debtor's first $106,800 of income (for purposes of calculating Social Security taxes), and 1.45% of all of the Debtor's income (for purposes of calculating the Debtor's Medicare taxes), the Court finds the Debtor's figure to be reasonable.  In addition, for the reasons stated in Part 2(C)(ii) below, the Court finds the inclusion of $46 for Personal Property Taxes to be appropriate.

Accordingly, these calculations, when totaled, serve to increase the Line 30 deduction from the stated $2,380, to $2,717.  The result is a monthly *decrease* of **$337** in the Debtor's disposable income.

*(ii)    Personal Property Taxes.*

The Trustee makes two arguments here.  First, the Trustee contends that personal property taxes are already included in the Vehicle Operation Expenses (Line 27A), or in the Ownership Expenses (Lines 28 and 29), both of which are Local Standards expenses.  The personal property tax is found in the Taxation portion of the Virginia Code.  Va. Code § 58.1-3500, *et seq*.  It is assessed and collected by the commissioners of revenue for the localities. Va. Const. art. X, § 4.  These taxes are apportioned, as are other taxes.  *See* Va. Code § 58.1-3511; *Ryder Truck Rental, Inc. v. County of Chesterfield,* 248 Va. 575, 449 S.E.2d 813 (1994).  The

16

Court finds that the expenses related to vehicle ownership and operation do not include taxes, and therefore, personal property taxes are properly included on Line 30.[13]

Second, the Trustee objects to the Debtor taking a deduction for the personal property taxes for a third car, which is used by the Debtor's father.  There is some support for the deduction of a third car, under certain circumstances.  *See In re Johnson*, 454 B.R. 882, 894 (Bankr. M.D. Fla. 2011) (vehicle deduction for third car allowed where the vehicle is "reasonably necessary for the care and support of the debtor and his dependents").[14]  In his closing argument, however, Debtor's counsel stated that the Debtor was not claiming the personal property taxes on the third vehicle.

As a result, the Debtor's total deduction with regard to Personal Property Taxes will be reduced from $59 per month by $13 per month to account for the third vehicle, resulting in total Personal Property Taxes of $46 per month.[15]

E.  *Life Insurance – Line 32.*

Here, the Debtor claims a deduction for three life insurance policies:

$67 per month ($200 quarterly) - $500,000 Policy

$16 per month ($49 per quarter) - $200,000 Policy

$20 monthly – Policy through employer

The question comes down to whether these expenses are "reasonably necessary" for the support of the Debtor and her dependents.  Term life insurance is, generally speaking, an allowable expense.  *In re Narvais*, No. 11-20583, 2011 WL 5027503, at *2 (Bankr. D. Wyo. Oct.

---

[13]  Even some "penalties," it turns out, are taxes.  *Nat'l Fed'n of Indep. Bus. v. Sebelius*, __ U.S. __, 183 L.Ed.2d 450 (2012) (Opinion of Roberts, C.J.).

[14]  Form B22-C, Line 27A, relating to vehicle operation expenses, allows vehicle operating expenses for "2 or more" vehicles.  Lines 28 and 29, on the other hand, appear to allow only ownership expenses for "Vehicle 1" and "Vehicle 2."

[15]  The monthly taxes associated with the third vehicle are based on the Debtor's testimony that she pays $75 every 6 months for her father's vehicle.  This annualizes to $150, and, divided by 12, comes to $13 per month.

17

21, 2011) (while life insurance is an "Other Necessary Expense" under the IRS Collection

Financial Standards, "whole life policies are savings devices and not necessary for an

individual's basic living expenses"); *In re Leggett*, No. 10-03383-8-RDD, 2011 WL 802806, at

*6 (Bankr. E.D.N.C. Mar. 2, 2011) (evaluating the deductions taken by a Debtor with regard to

the Chapter 7 means test, wherein $41.40 for term life insurance was determined to be an

allowable deduction).   However, the Court finds that the Debtor's dependents do not need three

policies.   The Court will allow the expense for the Debtor's current employer-sponsored policy

($20), and the premium for the $200,000 policy ($17), but not the $67 for the $500,000 policy.

This results in an *increase* in disposable income in the amount of **$67** per month.

F.   *Telecommunications – Line 37.*

The parties agree that this item should be reduced from $100 to $60, resulting in an

*increase* to disposable income of **$40.**

G.   *Chapter 13 Administrative Expenses – Line 50.*

The parties agree that this line item should be increased from $0 to $9, thereby resulting

in a *decrease* to the bottom line of **$9.**

H.   *Educational Expenses – Line 43.*

The Debtor deducted $147 on Line 43 for educational expenses for her daughter.   The

daughter attends public school.   The Debtor testified that these expenses consist of $55 a week

for a tutor recommended by her daughter's school, and an unknown amount for other expenses.

Consistent with Section 707(b)(2)(A)(ii)(IV), which allows a maximum of $1,775 per year per

child, the Debtor has capped her monthly deduction at $147.   *See* 11 U.S.C. §

707(b)(2)(A)(ii)(IV) (allowing a maximum of $1,775 per year per child "to attend a private or

public elementary or secondary school if the Debtor provides documentation of such expenses

18

and a detailed explanation of why such expenses are reasonable and necessary, and why such

expenses are not already accounted for in the National Standards, Local Standards, or Other

Necessary Expenses under subsection (I)" of Section 707(b)(2)(A)(ii)).

The Debtor has provided the required documentation to the Trustee.  The question is

whether the Debtor satisfactorily explained whether the tutoring expense of $55 per week ($220

per month, which alone puts them over the $147 per month cap)[16] is not already accounted for in

the National and Local Standards.  The Debtor has put forth no argument or evidence as to why

these expenses are not already accounted for in the National and Local Standards.  Accordingly,

the Court finds that the Debtor has not met her burden here, resulting in an *increase* in the

Debtor's disposable income by **$147** per month.

     *I.   Charitable Contributions – Line 45.*

There is no dispute here; this item remains at $50 stated on Schedule B22-C, resulting in

no net change to the bottom line.

     *J.   Qualified Retirement Deductions – Line 55.*

The Debtor deducts $704 for qualified retirement deductions - $500 per month for 401(k)

contributions, and $204 for repayment of the Debtor's 401(k) Loan.  B22-C, Line 55.

Section 1322(f) of the Bankruptcy Code provides as follows:

A plan may not materially alter the terms of a loan described in section 362(b)(19)
[which includes 401(k) loans] *and any amounts required to repay such loan shall
not constitute "disposable income" under section 1325.*

(Emphasis added).

Form B22-C itself provides, on Line 55:

---

[16]   We would expect to see these expenses during the 9 month school year, and not during the Summer months.
Thus, they average out to $165 per month ($220 x 9 divided by 12 = $165), still over the $147 statutory allowance
for expenses of this kind.

**Qualified retirement deductions.** Enter the monthly total of (a) all amounts withheld by your employer from wages as contributions for qualified retirement plans, as specified in § 541(b)(7) and (b) *all required repayments of loans from retirement plans, as specified in § 362(b)(19).*

(Emphasis added).

Thus, loan repayments to qualified retirement plans are expressly contemplated in Section 1322(f) and Form B22-C. *See also In re Glisson*, 430 B.R. 920, 922 (Bankr. N.D. Ga. 2009) ("[N]either a debtor's contributions to a 401(k) plan nor repayments of amounts borrowed from a 401(k) plan constitute disposable income under § 1325(b)."). Moreover, it is not unusual in this District to have a required "step up" in plan payments, premised on the payoff of retirement plan loans during the life of the plan.[17]

The Court can see some circumstances where this deduction would be disallowed on good faith grounds, as for example, where the Debtor takes a 401(k) loan on the eve of her bankruptcy filing in order to purchase luxury goods that she then exempts on Schedule C, or with which she takes a trip to the Bahamas. But here, where the Debtor used the funds for her bankruptcy attorney's retainer and to pay secured debt arrearages that would otherwise have to be paid in the Plan, the Court finds no bad faith in taking this deduction.

As well, the Debtor's pre-petition increase in her 401(k) contributions is not viewed as bad faith by the Court, in this case. The Debtor testified that she increased her contributions when her husband returned to his employment, after being unemployed for some period of time. The Debtor's desire to maximize her retirement benefits is not inconsistent with the obligation of good faith under the Bankruptcy Code. *In re Mati*, 390 B.R. 11, 17 (Bankr. D. Mass. 2008) ("[B]y excluding 401(k) contributions from property of the estate and expressly removing them

---

[17] In this case, the Debtor proposes to make payments of $204 per month to pay off the $4,600 she borrowed from her 401(k). *See supra* p. 4. The Debtor will pay off her loan in full after approximately 23 months, and she should likewise provide for a step up in plan payments.

from the definition of disposable income under section 1325(b), see 11 U.S.C. § 541(b)(7),

Congress has implemented a policy of protecting and encouraging retirement savings").

    Accordingly, there is *no change* in disposable income for purposes of the Debtor's Form

B22-C income.

    *K. Summary of Adjustments to Form B22-C Disposable Income.*

    For the reasons stated above, the Court will make the following adjustments to the

Debtor's disposable income, under Form` B22-C:

| | |
|---|---|
| Debtor's Original B22-C Disposable Income (Line 59): | ($159) |
| Net Rental Income | $83 |
| Paycheck deductions | $243 |
| Husband's 529 Savings Plan | $565 |
| Contribution Sheet line items | $79 |
| Health Care Deduction | $84 |
| Other Necessary Expenses (Taxes) | ($337) |
| Life Insurance | $67 |
| Telecommunications | $40 |
| Chapter 13 Administrative Expenses | ($9) |
| Educational Expenses | $147 |
| **Net Disposable Income, After Adjustments** | **$803** |

    Because this amount greater than the $500 proposed in the Debtor's Amended Plan,

confirmation will be denied.

21

**Conclusion**

For the foregoing reasons, the Court will: (a) sustain the Trustee's Objections in part, and deny confirmation of the Debtor's Amended Chapter 13 Plan, with leave to amend within 21 days; and (b) deny the Trustee's Motion to Dismiss.  The Court will enter an Order consistent with this Opinion.

Date: _____        _____

Brian F. Kenney
United States Bankruptcy Judge

Copies to:

Tatyana Paliev
20903 Ivymount Terrace
Ashburn, VA 20147
Debtor

Daniel M. Press, Esquire
Chung & Press, P.C.
6718 Whittier Ave., Suite 200
McLean, VA 22101
Counsel for the Debtor

Thomas P. Gorman, Esquire
300 N. Washington St. Ste. 400
Alexandria, VA 22314
Chapter 13 Trustee